1

1                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
2               SOUTHERN DIVISION AT PIKEVILLE
                       - - -
3

UNITED STATES OF AMERICA,    : Docket No. 24-cr-15
4                             :
              Plaintiff,  : Lexington, Kentucky
5                           : Friday, February 28, 2025
                           : 1:00 p.m.
6  v.                       :
                           :
7  DUSTIN NEWSOME,            :
                           :
8               Defendant.  :

9                       - - -
                TRANSCRIPT OF SENTENCING
10             BEFORE KAREN K. CALDWELL
          UNITED STATES DISTRICT COURT JUDGE
11                       - - -

12  APPEARANCES:

13  For the United States:     ERIN ROTH, ESQ.
                          U.S. Attorney's Office
14                       260 W. Vine Street
                           Suite 300
15                       Lexington, Kentucky 40507

16  For the Defendant:        STEPHEN W. OWENS, ESQ.
                          Stephen W. Owens Law Office
17                       237 Second Street
                           P.O. Box 1426
18                       Pikeville, Kentucky 41502

19  Court Reporter:           ELAINE S. HABERER, RPR, FCRR
                          Official Court Reporter
20                       101 Barr Street
                           Lexington, Kentucky 40507
21                       (859) 469-7456

22

23

24

     Proceedings recorded by mechanical stenography,
25  transcript produced by computer.

2

1          (Proceedings commenced in open court at 1:00 p.m.)

2               THE COURT:  You may be seated.

3          Would the clerk please call the matter to come before the

4     Court?

5               COURTROOM DEPUTY:  Yes, Your Honor.

6          Pikeville Criminal Action Number 24-15, United States of

7     America versus Dustin Newsome, called for sentencing.

8               THE COURT:  Can we call back to chambers?  I've

9     picked up the wrong notebook.  I've got two or three cases

10    going on.  I want to be sure I have all the information.  Or I

11    can run over there and get it real quick.

12              COURTROOM DEPUTY:  Would you like me to do it?

13              THE COURT:  We'll be off the record for just a

14    moment.

15         (Pause in proceedings.)

16              THE COURT:  We'll be on the record in Pikeville

17    Criminal Action Number 24-15.

18         Who is present for the United States?

19              MS. ROTH:  Good afternoon, Your Honor.  Erin Roth on

20    behalf of the United States.

21              THE COURT:  Ms. Roth.

22         For the defense.

23              MR. OWENS:  Good afternoon, Your Honor.  Steve Owens

24    on behalf of the defendant, Mr. Newsome, who is seated to my

25    left.

3

1          THE COURT:  Mr. Newsome, Mr. Owens.

2       This matter is called on for a sentencing hearing.  Has

3    the United States received and reviewed all the sentencing

4    materials, including the reports, the objections, the victim

5    statements, and all the briefs?

6          MS. ROTH:  Yes, Your Honor.

7          THE COURT:  Very well.  I didn't see any objections.

8    Are there any you would bring to my attention?

9          MS. ROTH:  There are none, Your Honor.

10          THE COURT:  Very well.

11       Mr. Owens, have you and Mr. Newsome received all of the

12    sentencing material that I just mentioned and any other

13    relevant material?

14          MR. OWENS:  Yes, Your Honor.

15          THE COURT:  You have?

16          MR. OWENS:  Yes, we have.

17          THE COURT:  And I saw that you had filed two

18    objections that had not yet been resolved.  I understand that

19    these objections are to the application of 2G2.2 and 4B1.1; is

20    that correct?

21          MR. OWENS:  That's correct, Your Honor.

22          THE COURT:  Very well.  I have read all the

23    materials, but I'll let you speak further to those objections.

24          MR. OWENS:  Okay.  Thank you, Your Honor.  If I may,

25    in the probation officer's final draft, he mentioned that

4

1    there is no guideline or commentary regarding counting five

2    levels under 4B1.5 and five levels under the 2G2 point

3    whatever.  So then he goes on to cite the *Brown -- United*

4    *States v. Brown*, which was a Sixth Circuit case in 2019, I

5    believe.

6        In that case -- well, first of all, they state in that

7    case that 4B1.5 permits that, but when you look at 4B1, if I

8    may, it says -- it talks about repeat offenders and that sort

9    of thing, and it says 5 levels plus the offense level.  So it

10   really doesn't say plus the enhancement.  But I think the

11   Court up there in Cincinnati mistakenly included 2G -- with

12   the 5 levels under 2G.  So he's getting five levels twice,

13   basically.

14       But they think that by referring to the offense level,

15   that includes the enhancement as well.  But when you read

16   4B1.5(b)(1), it says 5 levels plus the offense level.  So the

17   offense level is naturally included already.

18           THE COURT:  Very well.  Thank you, Mr. Owens.

19       Ms. Roth.

20           MS. ROTH:  Your Honor, we did address this in a

21   footnote.  Really, this argument should fail for two reasons.

22   First, it's without merit on the substance of the objection.

23   There is a Sixth Circuit case directly on point.  *United*

24   *States v. Hensley*, that we quoted in our sentencing

25   memorandum, 110 F.4th 900, with the quote at 906, which the

1    quote says, "Section 4B1.5(b)(1) says the offense level shall

2    be 5 plus the offense level determined under Chapters Two and

3    Three.  The use of the term 'plus' is 'clear, unambiguous

4    language' supporting applying 4B1.5(b)(1) on top of any

5    provisions from Chapters Two and Three."

6        I think that directly hits the argument here, which is

7    that the offense level determined under Chapter Two, which

8    would include specific offense characteristics, including the

9    enhancement for a pattern, would apply.  4B1.5 is in addition

10   to.

11           THE COURT:  But I read in the footnote to your

12   sentencing memorandum, which really addresses this objection,

13   that 2G2.2(b)(5) has no impact on the guideline application.

14           MS. ROTH:  Well, and that was my second point, Your

15   Honor.  It's just procedurally, this argument really has no

16   impact on the actual guidelines because here, there is a

17   cross-reference under 2G2.2, which is the possession guideline

18   that has the pattern enhancement.

19       If the offense involved production and if it groups,

20   which in this case there is a production count, as the Court

21   is aware, those two offenses do end up grouping.  So what you

22   end up actually taking is the offense level under 2G2.1

23   because it's higher.

24       2G2.1 doesn't have any kind of enhancement for a pattern.

25   So even if that weren't true, the argument fails on the

6

1   merits.  But in this case, the argument is basically moot

2   because the guideline application that we're using is under

3   2G2.1 which doesn't have the enhancement for the pattern.

4           THE COURT:  For reasons stated by the United States

5   here in court today, and I'm going to specifically reference

6   the argument in the footnote number one, raised in the United

7   States sentencing memorandum, the Court will overrule the

8   objection to the guidelines and find that the advisory

9   guidelines as calculated by the United States is correct.

10      Are there any other objections you would bring,

11  Mr. Owens?

12          MR. OWENS:  No, Your Honor.

13          THE COURT:  Very well.  The Court will adopt the

14  factual findings and the advisory guideline applications that

15  are set forth in the presentence report.

16      Accordingly, the Court determines that the appropriate

17  advisory guideline range for this defendant is from 360 to

18  600 months on Counts 1 and 2, based on a total offense level

19  of 42 and a Criminal History Category of I.

20      Now, the defendant entered a plea of guilty to both

21  counts of the information, so we don't have any counts to

22  dismiss.  The defendant has filed a sentencing memorandum,

23  which I have read.  The United States has filed a sentencing

24  memorandum, which I have read.

25      Before I hear, though, from the lawyers and from the

7

1    defendant, I understand that victims are present in the court

2    today who wish to be heard.  I will note that there are a

3    number of victim impact statements contained in the record.  I

4    have read them and am familiar with them all.

5        Tara, can you tell us who is present?  Ms. Atkins, I'm

6    sorry.

7            MS. MOWELL:  Good afternoon, Your Honor.  Present

8    today is Jenny Parker from the U.S. Attorney's Office and the

9    victims.  We have Patricia Blair and Jenny Donnelly on behalf

10   of some minor victims in this case, and then myself, I'm Lexi

11   Mowell.  I'm also from the Lexington Attorney's Office.

12           THE COURT:  Very well.  Who will be speaking first?

13   Please introduce yourself to the Court before you speak.

14           MS. MOWELL:  My name is Lexi Mowell.  I'll be reading

15   a statement on behalf of Linda Barnes.

16           THE COURT:  All right.  You may.

17           MS. MOWELL:  My name is Linda Barnes.  I'm the

18   relative placement for minor child.  Minor child is a victim

19   of Dustin Newsome.

20       Dustin Newsome, I want you to know that you have

21   disrupted and destroyed my child's life.  You taught my child

22   that it was all right to do sexual acts.  You taught him this

23   was just fine.

24       Dustin, you taught him that sexual acts were a form of

25   business.  You turned him against other adults.  Dustin, you

8

taught minor child that other adults did not understand him, but you did.  You manipulated my boy for your own perverted means.  Minor child is no longer himself.  Dustin Newsome caused him to be withdrawn from people he loves.  Minor child fears going to the store by himself.

Dustin, you have made him afraid to be himself.  Will someone else try and harm him?  What if he trusts the wrong adult again?

Dustin, you have deceived everyone.  My friend and I asked about you.  We tried to make sure you were safe to be around our boys.  You were a Spanish teacher in a school in our community.  This school told us you would be a good person, that it would be safe for you to play games on an Xbox with him.

This became just another way for you to take advantage of my boy and others.  Dustin, you pretended to be a Christian when, in fact, you are a liar and a deceiver.  You have the audacity to even invite me to church to save me.

You, Dustin Newsome, passing judgment on my life and doing the disgusting things you were doing with these children.  I will never understand why my child must suffer from your perversion.  I hope one day he can open up and let go of all the things you put him through.

He sees your victimization as transactions.  Dustin, you made him believe he was the one making decisions.  He is a

9

child.  He cannot make these decisions yet.  At every turn, you gave him money, drugs, vapes, and alcohol to meet your sexual needs.  He gained things from your relationship.

He doesn't have the ability to fully grasp what you took from him because he is so shut down emotionally and refuses to talk about it.  I don't even know the best way to help him.

Dustin, it is my strongest hope that even though you took a deal, the Judge will think of the deals you made with our sons and grandson and sentence you to the maximum.

Why should you have hope of getting out one day when our children have none?  You lied.  You manipulated.  You used.  And then, like a coward, you ran from what you did.  There will be nowhere to run when it's time to be judged by the Lord you invited me to learn about with you.

I hope that you have the life you deserve and the Judge sees that you, Dustin Newsome, showed no mercy to my boy, and you deserve no mercy in return.

Respectfully submitted, Linda Barnes.

THE COURT:  Thank you.

We'll hear from the next victim's statement.

VICTIM'S MOTHER:  Name is Patricia Blair.  I'm ███ ███ mother, and I'm also his great-grandmother.  However, due to my family's situation -- ███ family situation, I adopted him is how I became his mom.  Caring for ███ and his brother, ███, have been my entire focus.

1    However, my focus has shifted from trying to put the

2    pieces of our lives back together after actions of Dustin

3    Newsome.  Some people might ask how I let such a monster like

4    Dustin Newsome come into my children's life.

5        I trusted the judgment of people at my child's school.

6    The school counselors told me that it would be good for ▮▮▮

7    to talk to Dustin and to play games because he was a Spanish

8    teacher of the high school.  He was great with children.

9    Moreover, he was a good Christian man.

10       We now know what kind of man Dustin Newsome is.  I guess

11   he had us all fooled.  Dustin Newsome had many faces:

12   Educator, magician, church member, music minister leader, and

13   postman.

14       He used each of these faces to prey on young men,

15   especially my child.  My boy, ▮▮▮, was one of his first

16   victims.  Dustin Newsome has destroyed his life.  ▮▮▮ let

17   things with Dustin Newsome progress as he was turning his

18   attention to my younger son, ▮▮▮.  Just like with ▮▮▮, it

19   began with video games and secret handshakes.

20       Why does a grown man have secret handshakes with

21   children?  My heart's desire is that some day I will have my

22   son back and not the destructive shell of a boy that is left.

23   Because of Dustin Newsome's actions, my son has tried to

24   commit --

25           MS. MOWELL:  Because of Dustin Newsome's actions, my

1    son has tried to commit suicide.  He's engaging in

2    self-harming behaviors and cutting himself.  ▮ has been

3    using drugs and alcohol.  ▮ is very clear on who supplied

4    him with his first taste of drugs and alcohol.

5        Drugs became a currency for your perverted acts with my

6    child and others.  ▮ is full of rage.  He's full of

7    confusion.  Your actions have him questioning everything he

8    knew about himself.

9        He's involved with CDW and the juvenile court.  My child

10   has become a manipulator.  A skill he learned from you.  He

11   began lying, refusing to admit even when caught and confronted

12   with the evidence of his wrongdoing.  Another skill he learned

13   from you.

14       He has been in six different facilities and several

15   hospitals.  He has severe mental issues stemming from his

16   victimization with Dustin Newsome.  He has been diagnosed with

17   PTSD, anxiety disorder, dissociative identity disorder, and an

18   array of behavioral problems.

19       He is seeing a trauma therapist, a psychiatrist, and is

20   in substance abuse counseling.  He must take several

21   medications to cope with the many emotions he's dealing with

22   since he became a victim of Dustin Newsome.  His life will

23   never be the same.

24       Dustin Newsome, I hope that the Judge sees what

25   destruction you have brought to these boys.  I hope that she

1    gives you the maximum sentence allowable in this case.  No

2    matter how many years you sit in prison, my boy will never be

3    the same.  You took him from all sense of normalcy.

4        He already has been given a life sentence of confusion,

5    mental health issues, and behavioral issues.  Dustin Newsome,

6    you deserve no less than what you brought on these boys.  A

7    destroyed life for a destroyed life.

8        Know that we can pray, we can complete therapy, and we

9    can learn to survive and live again, but all that awaits you

10   is a cold gray cell in a federal penitentiary.  A life of

11   misery with criminals who will abuse you for your actions

12   against children, and a lifetime of waiting for the Lord you

13   used to harm these boys to issue your ultimate judgment.

14            VICTIM'S MOTHER:  I would also like to say at some

15   point in time -- I don't know that Dustin would do it or

16   not -- I would really like to know what all did happen to my

17   child so I could help him.  And thank you for listening to me.

18            THE COURT:  Thank you very much.  Are there any other

19   speakers who wish to be heard?

20            MS. MOWELL:  No, Your Honor.

21            THE COURT:  Thank you all very much.  We'll proceed

22   now.

23        Before I hear from the lawyers, Mr. Newsome, is there

24   anything you'd like to say to the Court to aid it in

25   determining the appropriate sentence in this case?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  You may.

3          THE DEFENDANT:  I know there's nothing I can say

4    to -- I do want to apologize to the young men that I affected

5    and their families.  I know it's not enough.  I do know that.

6    I just apologize.  I do care about these boys.  I know you

7    probably won't agree with that, and I care what happens to

8    them, and I wish them nothing but the best in life.

9          I also want to apologize to my family.  My parents are

10   here today, and they have given me nothing but unconditional

11   love and support my whole life, and I put them through the

12   wringer.  I just apologize.

13         This attraction that I have is something I've been

14   dealing with my whole life.  I didn't think I could confide in

15   my parents.  I was afraid.  I was afraid of trying to get

16   therapy.  I did confide in my pastor, who at first seemed to

17   support me, and then abandoned me.

18         There's -- I didn't know where to go from there.  So I

19   have to fight this battle with images online and with these

20   young men.  Nothing ever should have gone beyond playing video

21   games, and maybe not even that.  And that was a major lapse in

22   judgment on my end, and I deeply apologize.  And that's what I

23   have to say.

24         THE COURT:  Thank you very much.

25       Mr. Owens.

14

1          MR. OWENS:  Thank you, Your Honor.  Your Honor, there

2     is one matter that we probably ought to take up at the bench

3     very briefly, if you don't mind.

4          THE COURT:  You may.

5

6

7

8

9                    THIS PORTION OF THE TRANSCRIPT

10                   FILED SEPARATELY UNDER SEAL

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

16

1

2                    THIS PORTION OF THE TRANSCRIPT

3                    FILED SEPARATELY UNDER SEAL

4

5

6              THE COURT:  Anything else?

7              MR. OWENS:  No, thank you.

8              THE COURT:  All right.

9              MR. OWENS:  Your Honor, in terms of an appropriate

10      sentence, you know, I've had some of these cases before, and

11      they are very hard to figure out some of the reasoning behind

12      the behavior that brings these people before the Court.  I

13      think my sentencing memorandum tried to address that in some

14      way.

15         I don't know that that is -- I can't represent that that

16      is the etiological reason behind this, but it does seem to

17      have at least some impact on it, according to talking to

18      Dustin.  I know that when -- at least -- well, I know that

19      teenagers, young teenagers, when confronted by their parents,

20      when the parents find out that they are gay, the first thing

21      that the teenager says to the parent is:  Do you still love

22      me?

23         And I know that.  I know that from my heart.  And you

24      know, when you've been rejected by your biological mother, as

25      stated in my memorandum, you're afraid of rejection by your

17

1      adoptive parents, even though these are very, very wonderful

2      people that adopted him.  Very, very wonderful people.

3          I think that he was afraid to tell them what his

4      situation was.  And, you know, in Eastern Kentucky, being gay

5      is different than being gay here.  I mean, you could look

6      across the street and there are two gay bars here.  And

7      there's no such thing in Eastern Kentucky.

8          The stigma to it is different.  The reaction to the

9      people there is different, even your parents and that sort of

10     thing.  I know parents who have gay children, and they

11     struggle with that.  And the teenagers, I think, don't want to

12     tell their parents about that for fear that they might not

13     love them again.

14         So that's a fear that's real.  And I know that one

15     particular case that this Court adjudicated and sentenced in

16     Pikeville about four years ago, I think it was during COVID,

17     probably, '20 or '21, the young lady had two small children,

18     and they were basically babies.  One was in diapers, I think.

19         She was doing things with the children while she was

20     FaceTiming this guy down in South Carolina that you sentenced,

21     and you sentenced her to a long-term sentence to prison.  It

22     was egregious.  You talked to her about what those are --

23     you're a mother, you know, your instincts should be better

24     than that.

25         And those children could not resist, and I don't think

18

1    this reaches the level of that case at all.  That was a

2    360-month case, as I remember.  I looked at it yesterday to

3    confirm that, and it was a 360-month sentence.  But I don't

4    think this reaches that level.

5         I mean, you're talking about children; one was in

6    diapers, and the other one might have been only a year or two

7    older as I remember from looking back at the facts of the case

8    yesterday or the day before.  I can't remember now which one.

9         But when we sentence in these cases -- you know, in my

10   sentencing memorandum, I point out the maximum sentence for

11   manslaughter 1 in Kentucky is 20, the minimum for murder is

12   20.

13        People who have been sentenced as heads of cartels have

14   gotten as low as 20.  I think the head of what they call the

15   Gulf Cartel, 20-year sentence.  One of the people that was

16   involved in the Mumbai situation over there where a lot of

17   people were killed, 35-year sentence.

18        Funding of terrorists, 135 months.  We start off in one

19   case with a level 32 and then another case, a possession case,

20   I believe, level 18, if I'm correct in that, I hope I am, but

21   there's that more than 9 month or 9 level issue between when

22   you group these cases.

23        So, you know, and that kind of goes back to the

24   objection, which I don't want to rehash.  The Court already

25   ruled on that.  But these cases are difficult for everybody

1  here, and I know that people -- when a man wakes up -- you

2  know, transgender is a big issue politically, nationally now.

3  I don't think that a man wakes up one morning and says I want

4  to be a woman.  I don't think that gay people wake up one

5  morning and say I want to be gay, or I want to be a lesbian.

6  I don't think it happens that way.  I think it's much, much

7  deeper than that.

8       And a sentence as long as what the government is asking

9  for really does not give that person who is wired differently,

10  so to speak, a chance to get treatment and come back into

11  civilization and to society after some period of time and then

12  become productive.  The stigma of this is going to follow him

13  the rest of his life.  We know that.  His parents are going to

14  be destroyed over it.

15       A sentence as long as the government asks for, his

16  parents would no longer be on this earth, and I won't either.

17  So, you know, I think that sufficient but necessary would be

18  somewhere within the statutory minimum maximum, as opposed to

19  these guidelines that, you know, keep stacking and stacking

20  and stacking.  You know, you get a bump for this, a bump for

21  that, a bump for this, and a bump for that for one course of

22  conduct.

23       And I know that my experience with teenagers has been --

24  these victims are victims.  There's no -- I don't take away

25  from that at all, but I do want to say there was no

1    intimidation or physical coercion or emotional type of

2    coercion.  There was giving of gifts, alcohol, vapes, video

3    games, and some tobacco, that sort of thing.  There was sexual

4    conduct with victim number one, none with the others.  He was

5    a little older than the others.

6        But none of these boys woke up one morning with their

7    clothes off and a bottle of liquor on the side of them

8    wondering, what the heck happened to me?  It's not that

9    situation.  It's an enticement.  It has some of the signs of

10    grooming but not all the signs of grooming.

11        There are many that we've looked at in the last few days

12    and the last few months, but I think that a sentence somewhere

13    in the neighborhood in between the minimum and maximum, at the

14    minimum of the statutory punishment would serve to benefit all

15    of the 3553 factors that are before the Court and to be used

16    by the Court.

17        Irregardless of the guidelines, I think the departure and

18    a variance is warranted.  I think that we've talked about that

19    at some -- not at length, but at some -- at least to the point

20    in our sentencing memorandum.  Adult/juvenile criminality is

21    much higher for a person affected by the loss that he suffered

22    as a first grader.  He lost his mother and his sister in one

23    whack.

24        I think that that creates the lack of attachment that

25    makes it difficult to establish normal relationships.

21

1    Somewhere along the line, he had an event or was born that way

2    that caused him to have this attraction that is unnatural to

3    us but natural to him.  So that would -- I hope that he can

4    get out of prison in an age where he can have some sort of

5    life beyond what we see here in terms of the facts of this

6    case.  Thank you, Your Honor.

7            THE COURT:  Thank you.

8        Ms. Roth, I also want to hear from you, but I want to

9    hear -- I want to understand what the minimum and maximum

10   terms are more clearly.

11           MS. ROTH:  Yes, Your Honor.  For Count 1, which is

12   the production count, the minimum is 15 years and the maximum

13   is 30.

14           THE COURT:  30.

15           MS. ROTH:  For the possession of child pornography,

16   there is no minimum term.  The maximum term is 20 years

17   because the defendant had images of pre-pubescent children or

18   children under 12.  So a total of 50 years potential if those

19   run consecutively would be possible based on what he pled

20   guilty to.

21           THE COURT:  Thank you.

22           MS. ROTH:  I feel like I just need to say initially

23   that this case has nothing to do with the defendant being gay.

24   This case has everything to do with the defendant engaging in

25   sexual acts with children.

1      Regardless of the sex of those children, that's what this

2    case is about.  And this case is a tragedy.  Make no mistake

3    about it.  This case is a tragedy for everybody involved.

4      I take a lot of exception to this idea, however, that

5    this isn't as serious as some cases involving younger victims

6    because the children in this case were teenagers or close to

7    being teenagers.

8      This is one of the most serious I've prosecuted.  And

9    that's due primarily to the number of children in this case

10   that were victimized by Mr. Newsome.

11     When we have events that happen in this case and we reach

12   out to the victims, generally through a phone call, it takes

13   hours.  It takes hours to reach out to all of them.

14     There's a lot of talk about vicarious trauma to those of

15   us who are involved in these cases.  And I particularly

16   experienced that in this case because the outcomes and the

17   challenges that these families explained to us that their

18   children are facing and are dealing with as a result of the

19   victimization by Mr. Newsome -- you've heard it through the

20   people here who gave wonderful summaries of seriousness:

21   Suicide attempts, cutting, substance abuse, hospitalizations,

22   incarcerations.

23     It's unfathomable what they are dealing with and will

24   deal with for the rest of their life.  These crimes, the

25   guideline ranges are very serious.  They are serious for a

23

1    reason.  And that is because these crimes will stick with the

2    victims for the remainder of their life.  They have wonderful

3    family support, each of their families are pursuing all of the

4    avenues that they can to get them help.

5        When I talk about the trauma, I experienced trauma

6    listening to their trauma.  It is a tiny, minuscule aspect of

7    what they have to deal with day in and day out because of the

8    actions of Mr. Newsome.

9        In this case, there were nine.  Nine boys that we were

10   able to identify that were victimized by Mr. Newsome that were

11   individuals that were known to him.  And while there are no

12   allegations that there was any kind of physically forcible

13   rape, there absolutely was coercion.  Absolutely in this case.

14       Mr. Newsome started out by developing friendships with

15   these boys.  He would do activities with them, take them to

16   get something to eat, take them to play basketball, and then

17   would begin to ramp up the friendship levels.

18       He would start to provide them with things that they

19   weren't able to get in other places, alcohol, nicotine, vapes.

20   And eventually, he would start asking them for sexually

21   explicit pictures of themselves and would not give them these

22   items unless they would agree to send the sexually explicit

23   images of themselves.

24       He also utilized the children who made other -- who he

25   then perpetrated the same type of coercive scheme with them to

24

1       get them to also produce sexually explicit images.

2           I appreciate that Mr. Newsome says it's something he's

3       struggled with for the majority of his life, but this is

4       something that he's been acting out criminally for years.  The

5       images on his computer go back at least ten years, and there

6       was a lot of imagery on his computer.

7           In addition to the victims that he knew, he was also

8       victimizing countless number of children whose images were

9       produced by other individuals but were obtained and possessed

10      by him for his sexual gratification.

11          In this case there were 31 identified series that were

12      found on his computer.  So we know there are at least 31

13      different series, many of those series may have multiple

14      victims.

15          When we are trying to think of the seriousness of the

16      crimes that were committed by him, we can't lose sight of what

17      that means and the sheer devastation and breadth of

18      victimization that were caused in this case.

19          As you've heard, it did not just stop at images.  He

20      actually did engage in physical, sexual contact with at least

21      one of these victims.  Quite simply, every barrier that

22      existed was broken by Mr. Newsome.  And as you heard from the

23      victims, they trusted him.  They trusted him because he was

24      what they believed to be an upstanding member of the

25      community.  That's what I call a veneer of trust because,

25

1       clearly, he wasn't trustworthy.  But they had no way to know
2       that.
3           These boys were young, vulnerable, impressionable, and
4       Mr. Newsome knew that.  He used every avenue available to him
5       to take advantage of that.
6           I have a lot of these cases where the sentence is
7       360 months, and that's because it's a statutory maximum for
8       one count of producing sexually explicit images of children.
9       In this case, I think that it deserves more than that for a
10      couple of reasons.
11          First, as I said, it's the sheer number of victims in
12      this case.  It is something that is not adequately captured in
13      the guideline range, and it's fair to say the guideline range
14      in this case is 360 to life.  So the sentence that we've
15      requested, which is 480 months, is within the guideline range.
16      But the number of victims is not captured.  It's not
17      captured --
18          (Alarm beeping.)
19          THE COURT:  I just wanted to be sure we didn't need
20      to run for a fire.  Okay.  That's all right.
21          MS. ROTH:  As we know, there is a pattern enhancement
22      under 4B1.5 for someone who engages in a pattern of this
23      conduct, but that guideline enhancement would have applied
24      based on two instances of conduct with one victim.
25          This defendant had patterns involving nine victims that

1    is not captured.  In prior cases that I've had, there have

2    been pseudo counts created for each of the victims of

3    production, and there is, I guess, some question right now in

4    the guideline world about whether that's appropriate.  In this

5    case, they were not applied.  We did not object to that, but I

6    do think that it's important to recognize that because there

7    aren't pseudo counts, the conduct for each of these victims is

8    not captured by the guideline range.

9         In this case, the sheer number is worth an additional

10   penalty because, again, the sheer and lifelong devastation

11   that each individual victim will be dealing with.

12        Frankly, the reason that we asked for 480 months and not

13   more time is because Mr. Newsome did plead guilty to an

14   information in this case.  He did ultimately take

15   responsibility for his actions.

16        When the state charges came out, he ran and was missing

17   for a period of time, so I do think that's been an evolution.

18   But in this case, he has admitted his conduct.  I do think

19   he's remorseful in some capacity, and so we have given

20   consideration to that in our recommendation.

21        I know that that may sound crazy given the length of

22   time.  It is an extremely significant time that we are

23   requesting, but, Your Honor, with every fiber of my being, I

24   think it's warranted.  This is a case that really has had

25   negative consequences that I feel like I can't do justice to.

1     I think our victim representatives here have done it so

2     much better than I ever could.  But the conduct in this case

3     was heinous, and we would request a sentence of 480 months.

4               THE COURT:  Thank you.  Cases like this are always

5     very difficult.  They are difficult for the lawyers.  They are

6     difficult for the victims.  They are difficult for the public.

7     They are difficult for the defendant and the defendant's

8     family.

9          Most of the people who come before this Court don't have

10    anybody or anything.  They don't have any hope.  They have

11    never had a day of respect.  They are uneducated.  They have

12    no money.  They have nothing.  Here, though, we have a

13    defendant who was brought up in a loving home by parents who

14    have cared for him, educated him, and who still love him

15    dearly.

16         He's educated.  He enjoyed the status of a standing in

17    his community, his church, and his educational system.  People

18    cared for this defendant.  People trusted him.  They looked up

19    to him.  But he took advantage of that, and that's, I think,

20    why this case is particularly disturbing.

21         Not only the number of victims that we know about, it's

22    the planning, the grooming, the length of time that this all

23    went on.  The subterfuge.  It was more than acting on some

24    kind of irresistible urge.  This defendant didn't want to lose

25    his status in the community because it provided him with a

28

1    unique access to victims.

2        And let me add that the victims of his crime include

3    Mr. Newsome's parents.  I can only imagine the agony that they

4    are suffering because they do still love you, Mr. Newsome.  I

5    think that's important to understand.  This Court is charged

6    with fashioning a sentence that protects the public and

7    promotes respect for the law, that deters this defendant from

8    engaging in similar conduct, but also anybody else who would

9    do this kind of thing.

10       I do believe that something is wrong deep inside

11   Mr. Newsome and that it's brought you to this place, and you

12   need treatment and help.  But you have to understand the harm

13   you caused.  In a way, it is much like a death.  It's the

14   death of innocence.  It's the death of hopefulness that has

15   come to so many young people.

16       As one victim pointed out, this is the kind of crime that

17   keeps happening because this distribution of pictures has the

18   capacity never to end.  Never to end.  It's always out there.

19   So this Court finds that this is indeed a serious crime, and I

20   want to achieve all of the sentencing objectives.

21       Therefore, it's the judgment of this Court that the

22   defendant is committed to the custody of the Bureau of Prisons

23   to be in prison for a term of 360 months on Count 1 and

24   240 months on Count 2, 60 months of which shall run

25   consecutively, and the remainder of which shall run

29

1  concurrently with the term imposed on Count 1, for a total
2  sentence of 420 months.

3      Now, I've gone below what the government has asked for
4  for a couple of different reasons. One, I believe that this
5  defendant is going to get treatment. This is a long sentence.
6  This is as long a sentence as this Court imposes. And the
7  defendant should be getting treatment and effective treatment
8  in prison. It is intense treatment.

9      Also, I believe that I can protect the public by imposing
10 a term of supervised release of ten years, that's each on
11 Counts 1 and 2, to run concurrently for a term of ten years.

12     Now, while you're in prison, Mr. Newsome, I want you to
13 participate in the Sex Offender Treatment Program. That is an
14 intense residential program. It can last for a multiple of
15 years, but it will provide what you never had the courage to
16 ask for when you were a younger person.

17     It's also recommended that you participate in any kind of
18 job skills or vocational programs. You're going to be in a
19 sex offender program for the rest of your life. You're not
20 going to be able to teach school. You're not going to be able
21 to be around kids. You're going to be restricted in what you
22 can do. So you're going to have to become educated about the
23 ways that you can support yourself and in a manner that is
24 permissible by law.

25     Now, while you're on supervised release, you shall not

30

1    commit another federal, state, or local crime.  You must

2    comply with the mandatory and standard conditions set forth in

3    the judgment and commitment order.

4        You must not possess a firearm, destructive device,

5    ammunition, or a dangerous weapon.  The drug testing condition

6    that's ordinarily imposed will be suspended because we see no

7    risk of future substance abuse here.

8        In addition, you must comply with the following

9    conditions:  You must participate in a program for treatment

10   of mental health and sexual disorders.  You must undergo a sex

11   offender risk assessment, psychosexual evaluation, and any

12   other evaluation deemed as needed by the United States

13   Probation Office.

14       You must submit to periodic polygraph examinations,

15   computer voice stress analysis testing, and other

16   psychological or physiological testing at the discretion and

17   direction of the United States Probation Officer.

18       You must follow the rules and regulations of the Sex

19   Offender Treatment Program as implemented by the probation

20   office.  That is separate and apart from the legal

21   requirements of the sex offender registration.

22       Your residence and your employment must be pre-approved

23   by the United States Probation Office, and it must be in

24   compliance with state and local law.  Unless it is previously

25   approved by the probation office, you must not frequent,

1    volunteer, or work at places where children under the age of

2    18 congregate.  That's places like playgrounds, parks,

3    schools, public swimming pools, youth centers, church youth

4    groups.  You must have no contact with any of the victims that

5    have been identified in this case or their families.

6        You must not associate, have verbal, written, telephonic,

7    or electronic communication with any person under the age of

8    18 without the permission of your probation officer.

9        Now, this doesn't encompass the kind of people that you

10    have to come in contact with in the ordinary course of

11    business, like young people who work in grocery stores, or

12    ticket counters, or fast-food places.

13        You must not possess or view visual depictions, as

14    defined in Title 18, United States Code, Section 2256,

15    including any photograph, film, video, picture, or computer or

16    computer-generated image or picture, whether made or produced

17    by electronic, mechanical, or other means of sexually explicit

18    conduct as defined in Title 18, 2256.  That would compromise

19    your treatment, so you can't do it.

20        You must not enter into any location where this kind of

21    material is available or where sexually stimulating

22    performances or material is available.  Of course, this does

23    not encompass commercial facilities in which pornography could

24    be available on a purely incidental basis.

25        You must not possess any materials depicting or

32

1    describing child pornography or simulated child pornography as

2    defined in Title 18, United States Code, Section 2256.  Again,

3    that would compromise your treatment.

4         You shall not enter any place where these kinds of

5    materials can be accessed, viewed, or obtained.

6         You must not possess a computer or any electronic device

7    with access to any online service at any location, including

8    your place of employment, without the prior written approval

9    of the United States Probation Office.

10        That would include the approval of your having a computer

11   and the parameters within which you must operate.  This

12   includes any Internet service provider, bulletin board system,

13   or any other public or private network.

14        You must consent to unannounced examinations of any or

15   all electronic devices, computer systems, internal and

16   external storage devices, handheld devices, anything that has

17   the ability to receive or install or to store any kind of

18   information.  And that shall be done at unannounced or as

19   planned by the United States Probation Office.

20        You're going to jail for 35 years.  It's difficult for me

21   to anticipate the kinds of devices that may be available in

22   that length of time, so I am trying to prohibit, or it is my

23   intention to prohibit, any method of obtaining sexually

24   stimulating material.

25        You must provide the United States Probation Office with

1    accurate information about any computer system, its hardware

2    and software, any kind of device, all account user names, all

3    passwords used by you, and you must abide by all rules that

4    are established by the United States Probation Office in terms

5    of electronic device restriction and monitoring.

6        You must submit your person, property, homes, residences,

7    vehicles, storage units, papers, computers, as defined in

8    Title 18, United States Code, Section 1030(e)(1), but

9    including other devices such that are capable of electronic

10   communication or cloud storage, data storage devices or media

11   to a search at the direction and the discretion of the United

12   States Probation Office.

13       Failure to submit to that search would be grounds for

14   revoking your supervised release.

15       You must provide the United States Probation Office with

16   any access to financial information.

17       You must register as a sex offender under federal and

18   state law, and you must comply with all of the conditions

19   required by state law.  That is in addition to the conditions

20   that I have just stated.

21       You must provide the probation officer with any financial

22   information they request of you.  However, based on your

23   current financial situation, the Court will not impose a fine

24   in this matter.

25       It's ordered, however, that you shall pay to the United

1   States a special assessment of $200, that's $100 a count,

2   which is due immediately.

3       The Court finds, however, that you are indigent and will

4   not impose the supplemental JVTA assessment.  The Court

5   further waives the AVAA assessment under Title 18, United

6   States Code, Section 2259(a).

7       The Court orders victim restitution totaling $105,000,

8   which is payable to each of the seven identified victims

9   referenced in the second addendum to the presentence report,

10  in the amount of $15,000 each.

11      Considering all monetary penalties, a lump sum payment of

12  $105,200 shall be due immediately.  Because I know it's going

13  to be difficult to pay, I'm not going to impose interest on

14  the restitution.

15      Any outstanding balance owed upon the commencement of the

16  defendant's incarceration must be paid in accordance with the

17  Federal Bureau of Prisons Inmate Financial Responsibility

18  Program, and any outstanding balance owed upon the

19  commencement of supervision shall be paid according to a

20  schedule set by subsequent orders of the Court.

21      The preliminary judgment of forfeiture, as entered at

22  Docket Entry Number 13, is final with this sentencing.

23      Is there any legal reason sentence should not be imposed

24  as stated, Ms. Roth?

25          MS. ROTH:  No, Your Honor.

35

1          MR. OWENS:  No, Your Honor.

2          THE COURT:  A judgment and commitment order will be

3    prepared consistent with this pronouncement.

4      Now, I want you to listen carefully, Mr. Newsome.  The

5    Clerk of Court is going to give you some information regarding

6    your rights to appeal in this case.  I believe you waived some

7    or all of those.  I'm going to give you a copy of this

8    information to keep for your records.

9      I know that Mr. Owens is going to keep you well-advised.

10   I will ask you and Mr. Owens to sign a copy and return it to

11   the Court as evidence that the information was given to you

12   here in court.

13      Madam Clerk.

14          (The form entitled "Court's Advice of Right to

15   Appeal" was read aloud in open court by the clerk, and said

16   form was signed by the defendant.)

17          THE COURT:  The record will reflect that the

18   defendant and his counsel have executed the acknowledgment

19   form, which will be filed in the record.

20      Ms. Roth, is there anything further?

21          MS. ROTH:  The only thing, Your Honor.  I believe it

22   will be done, but just to make sure, the restitution chart

23   that was provided lists the victims' names and addresses.  We

24   would just request that that be maintained under seal when

25   provided to the clerk's office.

36

1        THE COURT:  All right.  And I'll make that part of

2   the judgment and note that that should be maintained under

3   seal.

4        MR. OWENS:  Yes.

5        THE COURT:  All right.  Anything further, Mr. Owens?

6        MR. OWENS:  Your Honor, if the record would reflect,

7   I have given Mr. Newsome my motion and affidavit to appeal in

8   forma pauperis in case he does decide to appeal.

9        THE COURT:  If he decides to appeal, that's correct.

10  And I think you can file the notice of appeal on his behalf.

11  Are you CJA appointed?

12        MR. OWENS:  No.

13        THE COURT:  Okay.  And if he doesn't have the funds,

14  we'll appoint someone for him, but what's very important is

15  that appeal has to be filed in 14 days of entry of the

16  judgment.

17     Will you help him be sure that happens if he elects to

18  appeal?

19        MR. OWENS:  I will, Your Honor.  In fact, I thought I

20  had a notice of appeal with me, but I do not.  But I'll make

21  sure -- he'll be going to Clark County -- I don't know where

22  he'll be going.  I'll get it to him.

23        THE COURT:  Okay.  Thank you very much.  That

24  concludes this hearing.

25        (Proceedings concluded at 2:06 p.m.)

37

1

C E R T I F I C A T E

2          I, ELAINE S. HABERER, RPR, FCRR, certify that the
foregoing is a correct transcript from the record of
3  proceedings in the above-entitled case.

4

5  _/s/ Elaine S. Haberer          June 3, 2025
ELAINE S. HABERER, RPR, FCRR          Date of Certification
6  Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25